**UNITED STATES of America,**

v.

**Dahelak Bereket MANNA, Appellant.**

**No. 03–1603.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Feb. 25, 2004.

Decided March 11, 2004.

---

Paul L. Gray, Office of United States Attorney, Philadelphia, PA, for Appellee.

Dahelak Bereket Manna #55326-066, Ray Brook FCI, Ray Brook, NY, for Appellant.

Before RENDELL, BARRY and FISHER, Circuit Judges.

OPINION OF THE COURT

FISHER, Circuit Judge.

Appellant-defendant Dahelak Bereket Manna ("Manna") pled guilty to armed bank robbery in violation of 18 U.S.C. § 2113(d) and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Manna asserts several arguments on appeal, ranging from challenges to the district court's application of certain enhancements under the Sentencing Guidelines to constitutional attacks on §§ 924(c) and 2113(d). Manna's appellate counsel has filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), seeking to withdraw as Manna's counsel on the ground that Manna has no non-frivolous issues to raise on appeal. Because none of the contentions raised by Manna, or otherwise highlighted by counsel, has any legal merit, we will grant counsel's motion to withdraw pursuant to *Anders*,

and affirm Manna's guilty plea and sentence.[1]

## I.

On the afternoon of August 9, 2003, Manna entered the Lafayette Ambassador Bank in Bethlehem, Pennsylvania, leaped over the tellers' counter, and threatened to shoot the four present tellers if they did not keep their heads down. Manna took cash from the tellers' stations and fled from the bank. Within ten minutes of the robbery, and only one-half mile from the bank, police apprehended Manna. Police recovered the backpack in which Manna carried the stolen cash; it contained $18,866 in cash,[2] as well as a loaded Ruger .357 caliber revolver. Five hours after his arrest, and following the reading of his *Miranda* warnings, Manna orally confessed to police officers that he had robbed the bank.

A grand jury in the Eastern District of Pennsylvania indicted Manna on one count of armed bank robbery in violation of 18 U.S.C. § 2113(d) ("Count One") and one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) ("Count Two"). Manna pled guilty to both Counts. The district court sentenced Manna to 48 months incarceration on Count One and, because he had brandished a firearm during the armed robbery, to 84 months incarceration on Count Two, the mandatory minimum under 18 U.S.C. § 924(c)(1)(A)(ii). The sentence for Count Two was to be served consecutively to the sentence imposed for Count One. The district court also imposed a term of supervised release of five years, a special assess-

ment of $200, and restitution of $300 to the victim bank.

Manna filed a timely notice of appeal.

## II.

In reviewing an *Anders* brief, we ask (1) whether counsel adequately represented the client's case, and (2) whether an independent review of the record presents any non-frivolous issues. *United States v. Youla*, 241 F.3d 296, 300 (3d Cir.2001). "The duties of counsel when preparing an *Anders* brief are (1) to satisfy the court that counsel has thoroughly examined the record in search of appealable issues, and (2) to explain why the issues are frivolous." *Youla*, 241 F.3d at 300 (citation omitted). Our "inquiry when counsel submits an *Anders* brief is thus twofold: (1) whether counsel adequately fulfilled the rule's requirements; and (2) whether an independent review of the record presents any nonfrivolous issues." *Id.* (citations omitted). Where a case is wholly frivolous, we "can grant counsel's motion to withdraw and dismiss the appeal under federal law, or proceed to a decision on the merits if state law so requires." *Id.* at 299 (citation omitted). We confine our review "to those portions of the record identified by an adequate *Anders* brief ... [and] those issues raised in Appellant's *pro se* brief." *Id.* at 300.

As a result of entering an unconditional guilty plea to the two Counts, Manna waived all possible claims for appellate relief except (1) a claim that the court lacked jurisdiction to accept the plea, (2) a claim that the plea is invalid, as judged by applicable statutory and constitutional standards, and (3) a claim that the sentence imposed for the offenses is illegal. *See United States v. Broce*, 488 U.S. 563,

---

1. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

2. The bank had reported that Manna had stolen approximately $19,111 in cash.

109 S.Ct. 757, 102 L.Ed.2d 927 (1989).[3] To the extent Manna's guilty plea does not foreclose the objections he raises here, such objections are reviewed by this Court for "plain error" in accordance with Fed. R.Crim.P. 52(b). *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under plain error review, this Court may only grant relief if (1) the district court committed an error, (2) such error was plain, and (3) the plain error affected the "substantial rights" of the defendant. *Id.* In order for an error to affect "substantial rights," it must have been "prejudicial," i.e., "it must have affected the outcome of the district court proceedings." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770, 123 L.Ed.2d 508. We will correct a plain error only if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 732, 113 S.Ct. 1770 (internal quotation marks and citations omitted).

## III.

■ On appeal, Manna asserts seven challenges to his guilty plea and sentence: (1) that the imposition of separate, consecutive sentences for armed bank robbery and brandishing a firearm during the armed bank robbery violated the Double Jeopardy Clause of the United States Constitution; (2) that the enhanced sentence for brandishing a firearm under 18 U.S.C. § 924(c) was flawed because the indictment failed to allege that Manna brandished a firearm; (3) that §§ 924(c) and 2113(d), at least as applied to Manna, are unconstitutional exercises of Congress's Commerce Clause power; (4) that the district court's enhancement of Manna's armed bank robbery sentence pursuant to U.S.S.G. § 2B3.1(b)(1) for taking the property of a financial institution violated the Double Jeopardy Clause of the United States Constitution; (5) that the district court erred by imposing the two-year enhancement for brandishing under § 924(c) instead of the enhancement for brandishing under U.S.S.G. § 2B3.1(b)(2)(C); (6) that the district court erred by failing to apply the acceptance of responsibility reduction pursuant to U.S.S.G. § 3E1.1 to Manna's § 924(c) sentence; and (7) that the district court erred by enhancing Manna's sentence for armed bank robbery pursuant to U.S.S.G. § 2B3.1 because the victimized financial institution suffered "loss" of greater than $10,000, where all but $300 of the stolen funds were recovered by the bank. Manna's counsel asserts one additional, possible contention—that the district court's failure to verify that Manna and his trial counsel read and discussed the pre-sentence investigation report ("PSR") in violation of Fed.R.Crim.P. 32(i)(1)(A) entitles Manna to relief.[4]

## A.

■ Manna argues that the imposition of separate, consecutive sentences for

---

**3.** As Manna's counsel points out, the first two categories of unwaived objections noted in *Broce* are inapplicable here because the district court clearly had jurisdiction to accept Manna's guilty plea, *see* 18 U.S.C. § 3231, and the guilty plea was valid, knowing and voluntary under Fed.R.Crim.P. 11 and *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The record amply supports counsel's assertions, and Manna does not argue to the contrary.

**4.** We lack jurisdiction to consider any challenge to the district court's refusal to grant Manna's request for a downward departure because the district court recognized its power to depart downward, but exercised its discretion not to. *See United States v. Stevens,* 223 F.3d 239, 247 (3d Cir.2000) ("if the district court's ruling [i.e., the refusal to depart downward] was based on an exercise of discretion, we lack jurisdiction.") (citation omitted). In any event, Manna does not suggest that the district court's refusal to grant his downward departure request was erroneous.

armed bank robbery under 18 U.S.C. § 2113(d) and brandishing a firearm during and in relation to an armed bank robbery under 18 U.S.C. § 924(c) violates the Double Jeopardy Clause. Manna relies primarily on the Supreme Court's decisions in *Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) and *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). Indeed, in *Simpson*, the Court held that a single instance of armed bank robbery could not support charges under both 18 U.S.C. § 2113(d) and 924(c). *Simpson*, 435 U.S. at 16, 98 S.Ct. 909. The *Simpson* Court stressed that even though § 924(c) made clear that a sentence for its violation was to be "in addition to" punishment imposed for the underlying predicate offense, this statement failed to express with sufficient clarity that cumulative punishment should be imposed under § 924(c) where the statute creating the underlying predicate offense provided for an enhancement where a dangerous weapon was used. *Simpson*, 435 U.S. at 8, 98 S.Ct. 909. *See also Busic*, 446 U.S. at 404, 100 S.Ct. 1747 ("prosecution and enhanced sentencing under § 924(c) is simply not permissible where the predicate felony statute contains its own enhancement provision.").

The Supreme Court has since recognized, however, that a Congressional amendment to § 924(c) in 1984 abrogated *Simpson* and *Busic* on this issue. *See United States v. Gonzales*, 520 U.S. 1, 10, 117 S.Ct. 1032, 1037, 137 L.Ed.2d 132 (1997). The 1984 amendment clarified Congress's "desire to run § 924(c) enhancements consecutively to all other prison terms, regardless of whether they were imposed under firearms enhancement statutes similar to § 924(c)." *Gonzales*, 520 U.S. at 10, 117 S.Ct. at 1037–38. As such, "Congress thus repudiated the result we reached in *Busic v. United States*...." *Id.* (noting that the amendment abrogated *Simpson* as well). *See also United States v. Bishop*, 66 F.3d 569, 574 (3d Cir.1995) (separate, consecutive sentences under federal carjacking statute (18 U.S.C. § 2119) and § 924(c) did not violate Double Jeopardy Clause because "legislative intent to impose a consecutive sentence for the violation of section 924(c) is plain from the language of that provision"). Accordingly, Manna's contention that a separate, consecutive sentence under § 924(c) infringed the Double Jeopardy Clause is without merit.[5]

### B.

■ Manna argues that he is entitled to relief with respect to the § 924(c) offense because the indictment failed to allege that

---

**5.** Manna also invokes the Supreme Court's decisions in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) and *Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), in support of this Double Jeopardy argument. But *Blockburger*'s rule for detecting a Double Jeopardy violation is inapplicable where, as here, Congress "specifically authorizes cumulative punishment under two statutes...." *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983). *Dickerson* and *Flores* are presumably (Manna does not explain precisely why) cited for the proposition that Con-

gress may not override constitutional rights and strictures by simple legislation, *see Dickerson*, 530 U.S. at 437, 120 S.Ct. at 2332–33, a proposition Manna would presumably advance in support of his view that Congress's 1984 amendment of § 924(c) ran afoul of the Double Jeopardy Clause. Because the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended[,]" *Hunter*, 459 U.S. at 366, 103 S.Ct. 673, however, Congress did not violate the Double Jeopardy Clause by expressly authorizing punishment for a Section 924(c) offense separate from that for the underlying predicate offense.

Manna brandished a firearm during and in relation to the armed bank robbery. Manna's counsel correctly characterizes this contention as one seeking relief under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), where the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum ... must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. This contention is meritless, however, because the Supreme Court recently made plain that "brandishing" for purposes of § 924(c) "need not be alleged in the indictment, submitted to the jury, or proved beyond a reasonable doubt" because brandishing is a sentencing factor that does *not* increase the penalty for a crime beyond the prescribed statutory maximum. *Harris v. United States*, 536 U.S. 545, 568, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). *See also United States v. Parmelee*, 319 F.3d 583, 591 (3d Cir.2003) ("In those cases in which a sentencing factor or enhancement does not increase the penalty for a crime beyond the prescribed statutory maximum, *Apprendi* is not implicated and the facts supporting the sentencing factor or enhancement need not be charged in an indictment or submitted to a jury") (quoting *Harris*, 536 U.S. at 564–65, 122 S.Ct. 2406).

### C.

◼ Manna's broadest challenge is his constitutional attack on 18 U.S.C. § 924(c) and § 2113(d).[6] Manna indicates that the two statutes, at least as applied to him, are unconstitutional exercises of Congress's power under the Commerce Clause, U.S. Const. Art. 1, § 8, cl. 3. Manna's constitutional arguments do not survive this Court's deferential scrutiny of Congress's exercise of its Commerce Clause power.[7]

We have already rejected a Commerce Clause challenge to § 2113, *see United States v. Spinello*, 265 F.3d 150 (3d Cir. 2001), thereby foreclosing Manna's Commerce Clause challenge to § 2113. Although we have not yet definitively ruled on the constitutionality under the Commerce Clause of § 924(c) in this context (and we do not do so in this not-precedential opinion), the decisions of our sister circuits upholding § 924(c)'s constitutionality in similar circumstances seem eminently correct. *See United States v. Ricketts*, 317 F.3d 540 (6th Cir.2003) (upholding application of § 924(c) to underlying predicate offense of use of firearm in connection with a drug conspiracy) (citing cases); *United States v. Brown*, 72 F.3d 96 (8th Cir.1995) (upholding application of § 924(c) to underlying predicate offense of use of firearm in connection with a drug trafficking offense). Section 924(c) is not a "freestanding" statute, but rather applies where

---

**6.** Manna's guilty plea does not foreclose his constitutional challenge because the issue of a statute's constitutionality "goes to the jurisdiction of the district court." *Bishop*, 66 F.3d at 572 n. 1 (citing *Menna v. New York*, 423 U.S. 61, 62 n. 1, 96 S.Ct. 241, 242 n. 1, 46 L.Ed.2d 195 (1975) and *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103–04, 40 L.Ed.2d 628 (1974)).

**7.** "[C]ongressional acts are entitled to a 'presumption of constitutionality,' and will only be invalidated upon a 'plain showing that Congress has exceeded its constitutional

bounds.'" *United States v. Whited*, 311 F.3d 259, 266 (3d Cir.2002) (quoting *United States v. Morrison*, 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)). "In the particular context of the Commerce Clause, we have frequently framed our inquiry as the narrow one of whether Congress had a 'rational basis' for concluding that the activity it was regulating ... was sufficiently related to interstate commerce to support the statute's constitutionality." *Id.* at 267 (citations omitted).

certain felonies committed in violation of other federal statutes involve the use of a firearm. *See Ricketts*, 317 F.3d at 543. Here, § 924(c) is applied to an armed bank robbery committed in violation of 18 U.S.C. § 2113(d). As noted above, this Court has held that armed bank robbery in violation of § 2113 substantially affects interstate commerce, thus establishing the constitutionality of § 2113 under the Commerce Clause. As a result, application of § 924(c) based on the predicate offense of armed bank robbery satisfies the Commerce Clause as well. *See Brown*, 72 F.3d at 97 (noting that because § 924(c) conviction was "based on [defendant's] section 841(a)(1) drug trafficking offense, which involved 'an activity that substantially affect[ed] interstate commerce,' we reject [defendant's] *Lopez* challenge" to his § 924(c) conviction).

### D.

Manna raises four challenges to the district court's application of the Sentencing Guidelines. First, Manna suggests that the Double Jeopardy Clause precluded the district court from enhancing his sentence for armed bank robbery under U.S.S.G. § 2B3.1's enhancement for taking the property of a financial institution. Section 2B3.1(b)(1) requires a two-level enhancement of all robbery sentences where "the property of a financial institution ... was taken...." U.S.S.G. § 2B3.1(b)(1). Manna contends that a § 2B3.1 enhancement to a sentence for armed bank robbery is impermissible because the fact that property was taken from a financial institution is already an element of armed bank robbery, and therefore cannot be used as a sentencing enhancement factor. It is clear in this Circuit, however, that a "court must

make all applicable, mandatory adjustments unless the Guidelines specifically exempt the particular conduct at issue." *United States v. Johnstone*, 107 F.3d 200, 212 (3d Cir.1997) (citing U.S.S.G. § 1B1.1(b), which provides that the court must "[d]etermine the base offense level and apply any appropriate specific offense characteristics ... contained in the particular guideline in Chapter Two."); *United States v. Wong*, 3 F.3d 667, 671 (3d Cir. 1993) ("an adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines exclude its applicability."). Because neither § 2B3.1, nor the Guidelines generally, expressly forbids enhancing an armed bank robbery sentence where property was taken from a financial institution, the district court's § 2B3.1(b)(1) enhancement of Manna's armed bank robbery sentence was entirely appropriate.[8]

### E.

Manna next argues that the district court erroneously imposed § 924(c)(1)(A)(ii)'s enhancement for brandishing a firearm instead of the brandishing enhancement set forth in U.S.S.G. § 2B3.1(b)(2)(C). But once the district court found that Manna had brandished a firearm, it was compelled by the mandatory language of § 924(c)(1)(A)(ii) to impose the statutory enhancement for brandishing, and had no discretion to opt instead for the brandishing enhancement under the Guidelines. *See* 18 U.S.C. § 924(c)(1)(A)(ii) (persons who use or carry a firearm "during and in relation to any crime of violence ... shall, in addition to the punishment provided for such crime of violence ... if the firearm is brandished,

---

8. Moreover, because § 2B3.1 applies to all robberies, the specific crime of armed bank robbery would not be expressly "accounted for without the two-level enhancement" under § 2B3.1(b)(1).

be sentenced to a term of imprisonment of not less than 7 years") (emphasis added).

### F.

■ Manna's third challenge to his sentence is that the district court improperly failed to apply the acceptance of responsibility reduction under U.S.S.G. § 3E1.1 to the § 924(c) offense. However, the Guidelines unambiguously provide that Chapter Three, including § 3E1.1, "shall not apply to" a § 924(c) conviction. *See* U.S.S.G. § 2K2.4(b). The Application Notes reinforce the inapplicability of Chapter 3 of the Guidelines to a § 924(c) sentence, stating that except where a § 924(c) conviction results in the defendant being determined a career offender under § 4B1.1, "do not apply Chapter Three (Adjustments) and Chapter Four (Criminal History and Criminal Livelihood) to any offense sentenced under this guideline. Such offenses are excluded from application of those chapters because the guideline sentence for each offense is determined only by the relevant statute." *Id.* at § 2K2.4 appl. note 5. As § 3E1.1 is set forth in Chapter 3, the Guidelines clearly prohibit its application to a § 924(c) offense, thereby precluding Manna's argument here.

### G.

■ Finally, Manna argues that the district court erred by applying U.S.S.G. § 2B3.1(b)(7)'s one-level enhancement where a robbery effects a "loss" of greater than $10,000, but less than $50,000, because all but $300 of the stolen funds was recovered by the bank. "Loss" is defined in Application Note 3 of § 2B3.1(b)(7) as "the value of the property taken, damaged, or destroyed." *See* U.S.S.G. § 2B3.1(b)(7) appl. note 3. Manna suggests that although he stole more than $10,000 from the bank, the fact that the bank ultimately recovered all but $300 of the stolen funds should preclude application of the one-level "loss" enhancement under § 2B3.1(b)(7). Although we have not addressed this precise issue,[9] we have held in a related context that the amount of a "loss" is not reduced by the amount of the original loss recovered prior to sentencing. *See United States v. Chiarelli*, 898 F.2d 373 (3d Cir. 1990) (holding that "loss" for purposes of enhancing a sentence for receipt and possession of stolen property pursuant to then- § 2B1.2 should not be reduced by the amount of the property recovered).

In *Chiarelli*, we relied on the commentary to § 2B1.1, which included an example demonstrating that recovered property does not impact the amount of "loss." *Chiarelli*, 898 F.2d at 384. Section 2B1.1 is particularly instructive in determining the meaning of "loss" for purposes of calculating the sentence under § 2B3.1 for armed bank robbery because, prior to amendments effective November 1, 2002, "loss" for purposes of § 2B3.1 was determined by reference to "the Commentary to § 2B1.1."[10] Application Note 3(E) to § 2B1.1 resolves this issue against Manna. Application Note (E) provides that "[l]oss shall be reduced by ... money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected." *Id.* at appl.

---

9. Other circuits, however, have addressed the issue, and have concluded that "loss" under § 2B3.1 does not include amounts recovered or returned. *See United States v. McCarty*, 36 F.3d 1349, 1361 (5th Cir.1994); *United States v. Parker*, 903 F.2d 91 (2d Cir.1990).

10. As Manna's counsel points out, the Sentencing Commission stated in Amendment 617, Appendix C, Guidelines Manual, that it intended that the definition of "loss" previously contained in § 2B1.1 would still be used for purposes of § 2B3.1.

note 3(D). However, Note (E) goes on to state that "[t]he time of detection of the offense is the earlier of (I) the time the offense was discovered by a victim or government agency; or (II) the time the defendant knew or reasonably should have known that the offense was detected or about to be detected by a victim or government agency." *Id.* Manna's armed bank robbery was discovered by the victim bank simultaneous with its commission—the bank and its employees were held up by the armed Manna, and the employees were therefore eyewitnesses to his crime. Because, by definition, the recovered stolen funds were not returned to the bank until after the robbery was committed and discovered, those funds cannot operate to reduce the amount of "loss" within the meaning of U.S.S.G. 2B3.1(b)(1).

## H.

■ In dutifully executing its *Anders* obligation, counsel points out that the district court arguably failed to verify that Manna and his trial counsel read and discussed the PSR as required by Fed. R.Crim.P. 32(i)(1)(A). Even assuming that the district court did in fact fail to verify that Manna and his trial counsel read and discussed the PSR,[11] Manna has not—and upon our review of the record cannot—carry his burden of demonstrating that the district court's Rule 32 violation amounted to plain error. Indeed, the Rule 32 violation here is much akin to the Rule violation we found not to be plain error in *Stevens*, 223 F.3d 239. There, in concluding that defendant had failed to demonstrate that he was prejudiced by the district court's non-compliance with Rule 32, we noted

that "[t]he record reflect[ed] that the PSR was sent both to [defendant] personally and to his counsel, and that thereafter and prior to sentencing defense counsel filed a memorandum with the court discussing the PSR[.]" *Stevens*, 223 F.3d at 243. We also pointed out that defendant's original appellate brief and his reply both failed to indicate that he and his counsel had not received and read the PSR, and did not suggest that defendant was prejudiced or that anything in the PSR was inaccurate. *Id.* at 243. In rejecting defendant's claim that the Rule 32 violation constituted a so-called "structural defect," we stressed that defendant had been represented by counsel before an impartial judge, elements that create a " 'strong presumption' against finding any other errors to be structural defects[,]" and re-emphasized that defendant "was still able to make any and all objections to the PSR, as well as the government's arguments, and had the opportunity to address the court before sentencing." *Id.*

As in *Stevens*, Manna does not suggest in his *pro se* brief that he and his trial counsel failed to read and discuss the PSR. In fact, the record plainly demonstrates that Manna's trial counsel did review the report, though the record does not clearly reveal whether Manna and his trial counsel discussed the report. The record also reflects that, in addition to reviewing the PSR, Manna's trial counsel responded to it by requesting a downward departure of the sentences set forth therein in correspondence to the district court. Finally, and again as in *Stevens*, Manna has not asserted any claim of prejudice or any

---

11. It is not clear that the district court failed to verify under this Court's interpretation of Rule 32(i)(1)(A)'s requirement, which mandates only "functional fulfillment" of the Rule, *i.e.*, "that the district court 'somehow determine that the defendant has had this opportunity [to read the PSR and discuss it with counsel].' " *Stevens*, 223 F.3d at 241 (citing *United States v. Mays*, 798 F.2d 78, 80 (3d Cir.1986)). As discussed below, however, any violation of the Rule is a mere technical one that falls well short of plain error.

inaccuracy in the PSR, the omission of which assertions was central in our conclusion that prejudice was lacking in *Stevens*. In sum, Manna can show no prejudice, and therefore no plain error, because he cannot demonstrate that the outcome before the district court would have been different had the purported Rule 32 violation never occurred. *See United States v. Dixon*, 308 F.3d 229, 234 (3d Cir.2002) (in plain error context, "defendant must prove that, were it not for the plain error committed by the district court at the time of his plea, the outcome of the proceedings *would* have been different.") (emphasis in original).

### III.

Counsel's *Anders* brief is sufficiently thorough and Manna has no non-frivolous issue to raise on appeal. Accordingly, we grant counsel's *Anders* motion to withdraw, and affirm Manna's guilty plea and sentence.