**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0453n.06
Filed: August 1, 2008

**Nos. 04-4466, 04-4467**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee Cross-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| DAVID F. MAYS, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| Defendant-Appellant Cross-Appellee. | ) | |
| | ) | |
| | ) | |

Before: DAUGHTREY, GILMAN, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.** This case is part of a consolidated appeal involving thirteen defendants who were members of the Outlaw Motorcycle Club ("OMC"), an international motorcycle club with chapters across the country and around the world. In 1997, the Federal Bureau of Investigation and state law enforcement agencies began an investigation into the Green region of the OMC, which consists of chapters in Dayton, Ohio; Fort Wayne, Indiana; Louisville, Kentucky; Indianapolis, Indiana; and Oklahoma City, Oklahoma. As a result of the investigation, a grand jury in the Northern District of Ohio returned a 40-count indictment in 2003 charging the defendants with various federal offenses, including Racketeer Influenced and Corrupt Organizations Act ("RICO"), drug trafficking, and firearms offenses. The defendants were tried together before an anonymous jury.

Defendant David F. Mays was a member of the Green region of the OMC. Following trial, Mays was convicted on one count of substantive RICO, in violation of 18 U.S.C. § 1962(c), one count of RICO conspiracy, in violation of 18 U.S.C. § 1962(d), and one count of conspiracy to use or carry a firearm during and in relation to a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(o). On September 14, 2004, Mays was sentenced to 121 months' imprisonment on the RICO conspiracy count, and 120 months' imprisonment on the firearms conspiracy count, to be served consecutively.[1]

Mays's challenge to his conviction, on the ground that 18 U.S.C. § 924(o) is unconstitutional as applied to his case, is without merit. Mays also challenges his sentence and the government cross-appeals regarding the sentence. Two aspects of the sentence require that it be vacated. As explained below, the district court gave an erroneous reason for not imposing a four-level sentencing guideline increase for "permanent or life-threatening bodily injury," and the district court erred in applying the mandatory minimum and consecutive sentence requirements of 18 U.S.C. § 924(c).

## I.

As a preliminary matter, we hold that Mays's Commerce Clause challenge to his conviction under 18 U.S.C. § 924(o) lacks merit. Mays essentially argues that the jury found only that he committed violent street crimes. Because there is no evidence that those crimes were connected to

---

[1] The district court dismissed Mays's substantive RICO conviction after trial because that conviction violated the statute of limitations.

interstate commerce, Mays contends, § 924(o) is unconstitutional as applied to his case. This argument fails for two reasons.

First, under 18 U.S.C. § 924(o), Mays was convicted of conspiring to use or carry a firearm during and in relation to a crime of violence or drug-trafficking crime, which may be prosecuted in a court of the United States. Because Mays was convicted of conspiring with others, it makes little difference that the proof at trial did not establish that Mays himself engaged in conduct that affected interstate commerce while carrying or using a firearm. So long as Mays's co-conspirators engaged in such conduct, the jurisdictional nexus is satisfied. A cursory examination of the indictment reveals that the government alleged that the firearms conspiracy involved drug trafficking crimes and crimes of extortion. These are quintessentially economic crimes, *see United States v. Tucker*, 90 F.3d 1135, 1140-41 (6th Cir. 1996); *United States v. Bruce*, 405 F.3d 145, 147-48 (3d Cir. 2005), and the record is replete with evidence that Mays's co-conspirators engaged in such activity and that Mays used or carried a firearm during and in relation to these activities.

Second, Mays is simply incorrect in his assertion that his firearms conspiracy conviction is based on state-law street crimes with no connection to interstate commerce. As the statute makes clear, a § 924(o) offense (which incorporates § 924(c)) occurs when a defendant conspires to use or carry a firearm during and in relation to a crime of violence or drug-trafficking crime punishable under federal law. *Cf. United States v. Dumas*, 934 F.2d 1387, 1390 (6th Cir. 1991) (rejecting Tenth Amendment challenge to § 924(c) and noting that the statute applies only to the use or carrying of a firearm during or in relation to a federal crime); *United States v. Manna*, 92 F. App'x 880, 886-87

- 3 -

(3d Cir. 2004) ("Section 924(c) is not a 'free-standing' statute, but rather applies where certain felonies committed in violation of other federal statutes involve the use of a firearm." (quoting *United States v. Ricketts*, 317 F.3d 540, 543 (6th Cir. 2003))). Thus, in finding Mays guilty, the jury determined that the firearms conspiracy involved crimes punishable under federal, not state, law. And because the underlying federal laws are sufficiently connected to interstate commerce, there is no Commerce Clause problem with the § 924(o) conviction.

For these reasons, Mays's Commerce Clause challenge is rejected and his conviction under 18 U.S.C. § 924(o) is affirmed.

**II.**

With respect to Mays's sentence, the district court correctly determined that Mays's base offense level under U.S.S.G. § 2A2.1(a) was 28 for the RICO conspiracy sentence. However, the court erred in its reason for not applying the four-level specific offense characteristic increase for permanent or life-threatening bodily injury under § 2A2.1(b). The court also erred in applying the mandatory minimum and mandatory consecutive sentence provisions of 18 U.S.C. § 924(c) to Mays's sentence for his 18 U.S.C. § 924(o) conviction. For these reasons, we vacate and remand Mays's sentence.[2]

---

[2]In his brief, Mays also raised Sixth Amendment arguments related to his sentence. However, at oral argument, counsel for Mays conceded that those Sixth Amendment arguments have likely been foreclosed by subsequent case law. Finding no merit to Mays's Sixth Amendment arguments, we decline to address those arguments in this opinion.

Under the United States Sentencing Guidelines, the 2003 version of which applies in this case, the base offense level for a RICO conspiracy conviction pursuant to 18 U.S.C. § 1962(d) is calculated using the greater of 19 or the offense level applicable to the underlying racketeering activity. *See* U.S.S.G. § 2E1.1(a). When the underlying racketeering activity violates state law, the guidelines require that the district court apply the "offense level corresponding to the most analogous federal offense." § 2E1.1 cmt. n.2. Here, the district court calculated Mays's base offense level on the basis of a racketeering act alleged against Mays in the indictment—Racketeering Act 23. That racketeering act alleged, and the jury found, that Mays committed attempted murder under Indiana state law, in violation of Indiana Code §§ 35-41-5-1, 35-42-1-1. Evidence at trial established that Mays and other OMC members participated in a drive-by shooting at the clubhouse of the Iron Horsemen, a rival motorcycle gang, in Anderson, Indiana. As a result of the shooting, David Farley, who was in the clubhouse to attend a birthday party, was shot four times. The federal statute most analogous to attempted murder under Indiana law is the federal attempted-murder or manslaughter statute, 18 U.S.C. § 1113, the corresponding guideline for which is U.S.S.G. § 2A2.1 when attempted murder is implicated.

Under § 2A2.1, the base offense level is 28 if the object of the offense would have constituted first degree murder, as defined in 18 U.S.C. § 1111. *See* § 2A2.1(a)(1) & cmt. n.2 (2003). Additionally, a four-level specific offense characteristic increase is warranted where the victim of the attempted murder sustained permanent or life-threatening bodily injury. § 2A2.1(b)(1)(A). Application note 1(J) of U.S.S.G. § 1B1.1 defines "permanent or life-threatening bodily injury" as

an "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." At sentencing, the district court calculated a base offense level of 28, concluding that the conduct alleged of Mays in Racketeering Act 23, if successful, would have resulted in first degree murder as defined by federal law. However, the district court declined to impose the four-level specific offense characteristic increase for permanent or life-threatening bodily injury, reasoning that the jury had not made a finding that Farley's injuries were permanent or life-threatening.

Initially, and contrary to Mays's contention, the record supports the district court's determination that the conduct alleged of Mays in Racketeering Act 23, if successful, would have resulted in first degree murder as defined in 18 U.S.C. § 1111. At trial, Jerry Bloor, a member of OMC's Indianapolis chapter, testified that he and Mays were involved in a drive-by shooting in Anderson, Indiana, at the clubhouse of the Iron Horsemen. Bloor testified that, prior to the shooting, he and various members of the OMC, including Mays, attended car races in Indiana. After the races were over, Bloor, Mays, and two other OMC members, armed with pistols and shotguns, decided to go to the Iron Horsemen clubhouse to "let them know we was around." The group drove a car to the dead end of the street that the clubhouse was located on, turned the car around, and proceeded to "li[ght] the place up" while driving back. Bloor testified that he saw one person inside the door of the clubhouse before the shots were fired. Mays was the driver of the car.

On these facts, it was not clearly erroneous for the district court to conclude, by a preponderance of the evidence, that Mays engaged in conduct that, if successful, would have constituted first degree murder as defined in 18 U.S.C. § 1111. Under § 1111, a killing is murder in the first degree if, among other things, the killing is "willful, deliberate, malicious, and premeditated" or "perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed." From Bloor's testimony, the district court properly concluded that the conduct of Mays and his OMC cohorts would have qualified as first degree murder under § 1111 had a killing resulted from the drive-by shooting. Bloor's testimony establishes that the group decided to go to the clubhouse in a show of force and armed with weapons. Before shots were fired, the group turned the car around at the dead end of the street to facilitate the getaway, and it was apparent that at least one person was in the clubhouse. Further, the record establishes that the volume of shots fired into the clubhouse was sufficient to inflict several gunshot wounds upon the victim, David Farley. This evidence is sufficiently indicative of a willful, deliberate, malicious, and premeditated attempt to murder, and the district court's decision to impose a base offense level of 28 under § 2A2.1(a)(1) was therefore not clearly erroneous.[3] This conclusion is supported by the Eighth Circuit's decision in *United States v. Wilson*, 992 F.2d 156, 158 (8th Cir. 1993). In that case, the Eighth Circuit affirmed a district court's determination of premeditation and

_____

[3]Mays also makes an argument regarding the difference between the scienter required for murder under Indiana state law and the scienter required under the federal first degree murder statute. However, because it was proper for the district court to conclude that, had a killing occurred, Mays's conduct would have qualified as first degree murder under the federal statute, there is no reason to examine the difference between the scienter requirements in the Indiana and federal statutes.

deliberation for purposes of U.S.S.G. § 2A2.1(a)(1) and 18 U.S.C. § 1111 where the defendant "got into a car with two men who had just been involved in a shooting," was armed while in the car, and fired a shotgun out of the passenger window toward a group of people, though there was no evidence that pellets from defendant's shotgun hit the victim.

The district court did, however, give erroneous reasons for refusing to apply the four-level specific offense characteristic increase for permanent or life-threatening bodily injury under § 2A2.1(b)(1)(A). As discussed, David Farley suffered multiple injuries as a result of the drive-by shooting. At trial, Farley testified that on September 18, 1993, he was in the Iron Horsemen clubhouse for a birthday party. Approximately forty-five minutes after he arrived at the clubhouse, he was shot. Farley testified that he suffered four bullet wounds in the left side of his back and two collapsed lungs. In light of this testimony, the district court could properly have applied the four-level increase for permanent or life-threatening bodily injury. The testimony establishes that Farley's injuries—four gunshot wounds and two collapsed lungs—involved a "substantial risk of death." *See* § 1B1.1 cmt. n.1(J). Indeed, Farley's injuries are very similar to the injuries suffered by the victim in *United States v. Helton*, 32 F. App'x 707 (6th Cir. 2002), where this court held that the four-level increase was proper because the victim suffered "a bullet wound that pierces ribs and diaphragm, collapses a lung and requires the transfusion of four units of blood." *Id.* at 716. The district court's reason for not applying the enhancement here was that there was no jury finding that Farley suffered a permanent or life-threatening injury. This reason has since been discredited by the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and subsequent decisions of this

court. *See, e.g.*, *United States v. Sexton*, 512 F.3d 326, 329-30 (6th Cir. 2008) ("This court has squarely rejected defendants' contention that *Booker* and [*Blakely*] require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt.") (citation omitted).[4] On remand, the district court is to consider applying the four-level increase for permanent or life-threatening bodily injury.

Finally, though the issue is not raised by Mays, the district court also erred in imposing Mays's firearms conspiracy sentence. Federal Rule of Criminal Procedure 52(b) provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Thus, "this Court has discretion to correct plain errors affecting important rights of criminal defendants, even when not raised on appeal." *United States v. Graham*, 275 F.3d 490, 521 (6th Cir. 2001). Count 4 charged Mays with participating in a firearms conspiracy in violation of 18 U.S.C. § 924(o). For that count, Mays was sentenced to a consecutive term of 120 months' imprisonment. That consecutive sentence was the product of the presentence report's application of the mandatory minimum provided for in 18 U.S.C. § 924(c)(1)(A)(iii), and the mandatory consecutive sentence provision found in § 924(c)(1)(D)(ii). Unlike § 924(c), however, § 924(o) by its terms does not require a consecutive sentence and, similarly, § 924(c)'s mandatory minimums do not textually apply to violations of § 924(o). *See United States v. Stubbs*, 279 F.3d 402, 409 (6th Cir. 2002) ("[T]hese two statutory provisions call for significantly different statutory penalties . . . ."),

---

[4]In fairness to the district court, we note that Mays's sentencing took place during a time of uncertainty in federal sentencing—the period between the Supreme Court's *Blakely* and *Booker* decisions.

*abrogated on other grounds as recognized in United States v. Helton*, 349 F.3d 295, 299 (6th Cir. 2003); *see also id.* at 413 (dissenting op.) (minimum and consecutive requirements of § 924(c) "not mandated by the terms of [§ 924(o)]");[5] *Jackson v. United States*, No. Civ. 1:01-CV-112, Crim. 1:99CR74, Crim. 1:99CR107, 2001 WL 34563133, at *2 (W.D.N.C. June 20, 2001) ("Petitioner was convicted of conspiring to use and carry a firearm during bank robbery, in violation of 18 U.S.C. § 924(o), not § 924(c), and no mandatory minimum consecutive sentence is called for by that statute."). Section 924(o), instead of incorporating for the conspiracy the penalties for the primary offense, provides that "[a] person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years . . . and if the firearm is a machinegun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life." This is in contrast to statutory provisions like 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the *same penalties* as those prescribed for the offense . . . .") (emphasis added). It was plainly erroneous to sentence Mays according to the mandates of § 924(c) when he was convicted of violating § 924(o) instead of § 924(c). The error affected substantial rights because it subjected Mays to a consecutive and mandatory sentence that is not mandated by the statute. Further, the error seriously affected the

---

[5]The issue that divided our court in *Stubbs* was whether § 924(c)'s mandatory and consecutive provisions applied indirectly to a violation of § 924(o) through a cross-referencing provision in U.S.S.G. § 2K2.1. *Stubbs*, 279 F.3d at 407-10, 413-19. In this case, however, there is no indication in the record or in the presentence report that the district court arrived at the mandatory and consecutive sentence it imposed using the sentencing guidelines. We therefore decline to express a view with respect to the approach discussed in *Stubbs*.

fairness, integrity, and public reputation of the judicial proceeding. We therefore vacate and remand Mays's firearms conspiracy sentence for resentencing.

### III.

For the foregoing reasons, we vacate and remand this case with instructions to resentence Mays consistent with this opinion. We affirm Mays's challenged conviction.