**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

Case No. 17-5120

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jun 04, 2018<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE WESTERN DISTRICT OF |
| DOMINIC WILLIAMS, | ) | TENNESSEE |
|  | ) |  |
| Defendant-Appellant. | ) |  |

BEFORE: NORRIS, ROGERS and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Defendant Dominic Williams ("Williams") appeals his sentence from convictions for attempted bank robbery by force or violence, 18 U.S.C. § 2113(a), (d), (e) (Count 1); discharging a firearm during a crime of violence, 18 U.S.C. § 924(c) (Count 2); and being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1) (Count 3). Williams pleaded guilty to all three counts. The district court sentenced him to concurrent terms of imprisonment of 324 months on Count 1 and 120 months on Count 3, and 120 months on Count 2, to be served consecutively to Counts 1 and 3, for a total term of 444 months' imprisonment. The sentence on Count 2 was statutorily required under § 924(c). Williams raises two challenges to the sentence, asserting that (1) the district court erred in applying a four-level enhancement for permanent or life-threatening injury to the victim without the introduction of expert medical evidence, and (2) the district court erred by not taking into account the § 924(c) sentence when imposing sentence on the other two counts.

**I**

On the morning of Wednesday, March 18, 2015, Williams hid in the carport outside the Humboldt, Tennessee residence of Pamela Janeice Frisbee ("Frisbee"). When Frisbee entered the carport, Williams leaped out, accosted her with a .40 caliber Glock pistol, forced her into the car, and made her drive him to the bank where she worked as a manager. Once inside the bank, Williams demanded Frisbee give him money from the teller windows and from various vaults, saying he would kill her if the police came. Williams grew increasingly agitated as Frisbee told him she could not access the vaults without an authorized second employee. Finally, Williams said that if Frisbee could not get him access to the money, "[t]hen you're gonna die today."

Williams proceeded to shoot Frisbee from about two feet away; the bullet hit her in the upper left part of her chest. Williams then shot Frisbee again and she fell to the floor. Frisbee's necklace prevented the first bullet from penetrating her chest, but it broke her sternum and damaged her back, neck, and right lung. The second bullet struck her right shoulder, penetrated her chest, and exited the left side of her body above her heart. The second bullet caused irreparable muscle and nerve damage to her right arm. Frisbee lay motionless, afraid Williams would fire again. Williams then broke a window in the rear of the bank and fled on foot. Law enforcement apprehended him several blocks away. Frisbee, bleeding profusely, managed to get to her feet, locate a working telephone, and call 911. Emergency personnel came to her aid and airlifted her to a Memphis hospital. Frisbee subsequently underwent six months of physical therapy for her arms, neck, and back; received permanent partial disability for the injury to her arm, which is missing a front muscle; experienced ongoing shoulder and chest pain; and had trouble lifting objects. Diagnosed with post-traumatic stress disorder, she experienced bad dreams, difficulty sleeping, and hair loss.

Williams pleaded guilty to all three counts, pursuant to a plea agreement filed with the district court. The United States Probation Officer recommended a sentence of 324 months' imprisonment for Count 1; 120 months' imprisonment for Count 3, served concurrently with Count 1; and 120 months' imprisonment for Count 2, to be served consecutively to the sentences for the other counts. Initially, neither party objected to the presentence report ("PSR"); subsequently, Williams filed objections.. Objections 2 through 7 concerned factual matters, including Williams' denial that he "t[old] [Frisbee] that she needed to drive him to the bank," and that he "ever ask[ed] for money from a vault." He also denied saying, "'[t]hen you're going to die today,' and then immediately shoot[ing] [Frisbee]."

At sentencing, the district court applied a cross-reference to attempted first-degree murder under United States Sentencing Guidelines ("U.S.S.G.") § 2A2.1(a) and set Williams' base offense level at 33. The court then applied a four-level increase under U.S.S.G. § 2A2.1(b)(1)(A), based upon Frisbee's permanent or life-threatening injury, raising the offense level to 37. The court also imposed a two-level increase under U.S.S.G. § 3A1.3 because Williams physically restrained Frisbee during commission of the offense, raising the offense level to 39. Subsequent to applying a three-level reduction for acceptance of responsibility, the court determined a final offense level of 36.

At the time of the instant offenses, Williams was a convicted felon, with 1998 convictions in Los Angeles Superior Court for kidnapping; second-degree robbery; force/assault with a deadly weapon (not firearm), great bodily injury likely; false imprisonment with violence; and second-degree burglary, and a 2002 conviction in the same court for possession/purchase of cocaine base for sale. He thus qualified as a career offender, yielding a criminal history category of VI. The court applied an additional 120 months consecutive to the Guidelines range for the § 924(c)

conviction, resulting in a 444-525 months' Guidelines range. The statutory ranges were 10 years to life on the bank robbery count; up to 10 years on the felon-in-possession count; and a consecutive 10 years to life on the § 924(c) count.

The district court imposed a low-end sentence of 444 months' imprisonment. This sentence was comprised of a 324-month sentence for bank robbery by force or violence (Count 1); a 120-month sentence on the felon-in-possession count (Count 3), to run concurrently with the 324-month sentence; and a 120-month sentence on the § 924(c) count (Count 2), to run consecutively with the 324-month sentence.

## II

We review a district court's sentence "for both procedural and substantive reasonableness 'under a deferential abuse of discretion standard.'" *United States v. Powell*, 432 F. App'x 510, 511 (6th Cir. 2011) (citation omitted); *see also Gall v. United States*, 552 U.S. 38, 41 (2007). "We must affirm [the] sentence if it is 'reasonable.'" *United States v. Williams*, 436 F.3d 706, 707-08 (6th Cir. 2006) (citation omitted). In evaluating a sentence, we "give due regard to the opportunity of the district court to judge the credibility of the witnesses, . . . accept the findings of fact of the district court unless they are clearly erroneous[,] and . . . give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

The procedural and substantive reasonableness analyses are not completely distinct, but rather two steps in a single inquiry. *See United States v. Ming Liou*, 491 F.3d 334, 337 (6th Cir. 2007) ("[T]he border between factors . . . considered 'substantive' and . . . 'procedural' is blurry if not porous."). However, both aspects are necessary, for "reasonableness review requires us to inquire into both 'the length of the sentence' and 'the factors evaluated and the procedures

employed by the district court in reaching its sentencing determination.'" *Id.* at 338 (quoting *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005)).

We first look to whether there was a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. "[A] 'sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority.'" *United States v. Williams*, 505 F. App'x 426, 429 (6th Cir. 2012) (quoting *United States v. Gapinski*, 561 F.3d 467, 474 (6th Cir. 2009)); *Rita v. United States*, 551 U.S. 338, 356 (2007).

A sentence is substantively unreasonable where the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives . . . unreasonable . . . weight to any pertinent factor." *United States v. Salyers*, 661 F. App'x 862, 866 (6th Cir. 2016) (citation omitted). We consider "whether the length of the sentence is 'sufficient, but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)." *United States v. Vonner*, 516 F.3d 382, 396 (6th Cir. 2008) (en banc) (Clay, J., dissenting); *see also Ming Liou*, 491 F.3d 337, 340.

We may apply "a presumption of reasonableness to a . . . sentence that reflects a proper application of the Sentencing Guidelines." *Rita*, 551 U.S. at 347; *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) (noting that *Rita* permits a presumption within-guidelines sentence is reasonable, and continuing our long-standing use of the presumption); *see also Williams*, 436 F.3d 706, 708 (6th Cir. 2006) (first embracing the presumption).

**A**

Williams challenges the district court's application of a four-level enhancement to the Guidelines calculation for causing "permanent or life-threatening bodily injury" in the shooting victim. (Appellant's Br. at 24-25). He argues that the district court erred in applying the enhancement without "expert opinion establishing a foundation as to causation, diagnosis, prognosis or permanency. There was no introduction of medical records, regarding the alleged injuries sustained by the victim. . . . The only basis upon which the District Court relied in its finding was the lay testimony of the victim." (*Id.* at 30). This challenge represents a retreat from the contention made in Williams' objections to the PSR, in which he asserted that there was "no evidence to support th[at] [Frisbee] sustained 'permanent or life threatening bodily injury.'"

We review the district court's factual findings for clear error, while subjecting the district court's legal interpretation of a sentencing guideline to de novo review. *United States v. Baggett*, 342 F.3d 536, 539 (6th Cir. 2003). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 540 (quoting *Pledger v. United States*, 236 F.3d 315, 320-21 (6th Cir. 2000)). The analysis of a finding regarding permanent or life-threatening bodily injury is "highly fact specific," *id.*; we are cognizant that "the district court is by far best-suited to assess that myriad of factors observable in hearing the evidence presented," *id.* (quoting *United States v. Hamm*, 13 F.3d 1126, 1128 (7th Cir. 1994)).

The Guidelines provide for a four-level increase in a defendant's offense level where the victim sustains "permanent or life-threatening bodily injury." U.S.S.G. § 2A2.1(b)(1)(A). Such an injury is defined as one "involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1, Application Note 1(J).

Williams contends that Federal Rules of Evidence 701 and 702 required expert testimony in his case. (Appellant's Br. at 30). He further contends that "determination of permanent or life threatening bodily injury can *only be established* through the testimony of an expert." (*Id.*) (emphasis added). He concludes that "[t]he failure to present any evidence to support the lay testimony of the victim should have prohibited the District Court from overruling William[s'] objection" to the enhancement. (*Id.* at 31). Williams cites no supporting statutory authority or case law, and this Court is aware of none. *Cf. United States v. Mays*, 285 F. App'x 269, 274 (6th Cir. 2008) (finding shooting victim's testimony sufficient to establish seriousness of his injuries for purposes of sentencing enhancement).

Moreover, sentencing proceedings involve "judicial fact-finding . . . using a preponderance of the evidence standard." *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). Numerous cases involving injuries similar to those present here uphold the application of the "permanent or life-threatening injury" enhancement. *See, e.g., Baggett*, 342 F.3d at 540 (finding no clear error in district court's conclusion that "fractured finger, cracked tooth and substantial contusions and bruises" amounted to "permanent or life-threatening injury"). In *United States v. Helton*, we reversed a district court's finding that a shooting victim's injury was "serious" but not "permanent or life-threatening." 32 F. App'x 707 (6th Cir. 2002). The Court found that "a bullet wound that pierces ribs and diaphragm, collapses a lung and requires the transfusion of four units of blood" is "an injury causing a substantial risk of death"—even though, "despite the severity of the injury, the victim was too tough to die." *Id.* at 716. In *United States v. Washington*, we held that the district court "did not commit clear error in determining that [the victim's] injuries were grave and long-lasting enough to be considered life-threatening and permanent," where the shooting victim underwent "a six-month convalescence, a year-long need for a colostomy bag, the implantation of

a steel rod in his leg, and a permanent impairment in the use of his hand." 702 F.3d 886, 897 (6th Cir. 2012); *see also Mays*, 285 F. App'x at 274 (finding that four gunshot wounds in the back and two collapsed lungs were injuries involving a "substantial risk of death").

Here, Williams did not dispute the account of Frisbee's injuries contained in the PSR, including the victim's statement; among Williams' six objections "regarding the facts of this case," none related to Frisbee's injuries. Williams also made a general, vague objection to Frisbee's victim impact statement; that objection, in its entirety, stated: "The defendant objects to the victim statement given by [Frisbee]. He states that some of these statements are not accurate." Even Williams' assertion that "there is no evidence to support th[at] [Frisbee] sustained 'permanent or life threatening bodily injury'" is accompanied by no objection to any part of the fact pattern contained in the PSR regarding the gunshot injuries suffered by Frisbee, the medical care received, or Frisbee's subsequent health consequences. Because Williams does not dispute the facts of Frisbee's injuries as set forth in the PSR, those facts are deemed admitted. *See United States v. Logons*, 136 F. App'x 789, 793 (6th Cir. 2005) (citing *United States v. Stafford*, 258 F.3d 465, 475-76 (6th Cir. 2001)).

While not challenging the factual framework of Frisbee's injuries, Williams does question whether they were "permanent or life threatening" for the purposes of determining a Guidelines enhancement. Williams argues:

> In accordance with Rule 701 and 702 of the Federal Rules of Evidence, expert testimony *must be provided* in circumstances where the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. The determination of permanent or life threatening bodily injury *can only be established through the testimony of an expert.* The introduction of medical records is an essential bare minimum *requirement* needed to establish the elements necessary in supporting an enhancement of 4 levels under U.S.S.G. 2A2.1(b)(1)(A). The failure to present any

evidence to support the lay testimony of the victim should have *prohibited* the District Court from overruling William's [*sic*] objection to this enhancement.

(Appellant's Br. at 30-31) (emphases added).

Williams' invocation of Rules 701 and 702 is inapposite. First, Rule 701 is about lay opinion, not expert, testimony. *See* Fed. R. Evid. 701. Second, Williams mischaracterizes Rule 702 as prescriptive, when in fact it is permissive: the rule provides that "[a] witness who is qualified as an expert . . . *may* testify" and sets forth the requirements that must be met for such testimony to be admitted. Fed. R. Evid. 702(a) (emphasis added). Nowhere does Rule 702 *mandate* that expert testimony be obtained. Third, Williams' argument contradicts itself. It cannot be true that the determination of permanent or life-threatening bodily injury can only be established through expert testimony, *and* that "introduction of medical records is an essential bare minimum requirement" to support the Guidelines enhancement for such injury.

More importantly, the Federal Rules of Evidence do not apply to sentencing proceedings. *See* Fed. R. Evid. 1101(d)(3); *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007) (distinguishing criminal trials from sentencing proceedings, which are not governed by the Federal Rules of Evidence and "many other . . . constitutional requirements"); *see also Williams v. New York*, 337 U.S. 241, 251 (1949) ("The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure.").

Furthermore, Williams' challenge to the four-level enhancement for "permanent or life-threatening bodily injury" without expert medical proof is unsupported by any citation to case law. (Appellant's Br. at 24-31). Williams even goes so far as to argue that "[t]he failure to present any evidence to support the lay testimony of the victim should have prohibited the District Court from overruling William's [*sic*] objection to this enhancement." (Appellant's Br. at 31). This sweeping claim, too, is made without citation to supporting authority. *Cf. Mays*, 285 F. App'x at 274.

Williams also contends that Frisbee's testimony should be accorded no weight in the sentencing enhancement context because it is lay opinion testimony. (Appellant's Br. at 25, 31; *see also id.* at 25). However, Frisbee's statements were not opinion testimony, but rather direct sensory testimony of injuries she suffered as a result of Williams' criminal conduct. *See* Fed. R. Evid. 601 (requiring that a witness have personal knowledge of the matter on which she testifies and permitting the witness' own testimony to provide evidence of that knowledge). Even assuming arguendo that Frisbee's statements were deemed lay opinion testimony, though, it seems clear that such testimony would qualify as being "[r]ationally based on the witness's perception," Fed. R. Evid. 601(a), "helpful . . . to determining a fact in issue," 601(b), and "not based on . . . specialized knowledge," 601(c).

Here, Frisbee's uncontroverted testimony furnished ample evidence that she suffered "permanent or life-threatening injury" under U.S.S.G. § 2A2.1(b)(1)(A) from the two gunshots she suffered at close range. Precedent firmly supports the authority of a sentencing court to make such a determination as this based on a preponderance of the evidence. Williams cites no contrary precedent; his invocation of the Federal Rules of Evidence is unavailing; and he did not dispute any of the factual framework contained in the PSR regarding Frisbee's injuries and their subsequent impact on her. With respect to the district court's application of the four-level enhancement for "life-threatening injury," therefore, the district court did not abuse its discretion.

**B**

Williams also argues that the district court erred by failing to take into account the mandatory consecutive "additional" sentence for Count 2 under 18 U.S.C. § 924(c) when determining the sentences for Counts 1 and 3. Relying on *Dean v. United States*, 137 S. Ct. 1170 (2017), Williams contends that the district court failed to take into account the "significant

disparity between the statutory mandatory minimum sentence of 240 months[] and the recommended guideline range sentence of 444 months"—the argument he made at sentencing (Appellant's Br. at 15). Williams goes on to state that, in view of *Dean*, "the District Court could have considered the disparity caused by imposing the consecutive statutory sentence mandated by § 924(c)." (*Id.* at 11; *see also id.* at 16). Specifically, Williams points to the 204-month difference between the statutory minimum sentence for his three offenses and the 444-month low end of his Guidelines range. (*Id.* at 20). For Williams, this "significant disparity" is of "significant concern." (*Id.*).

As a preliminary matter, the government contends that "Defendant was required to make this specific objection even if binding circuit precedent would have made such a request futile," citing to *Johnson v. United States*, 520 U.S. 461 (1997). (Appellee's Br. at 10). The holding in *Johnson*, however, was precisely the contrary: there, the Supreme Court agreed with the petitioner's argument that such a requirement would inevitably lead to "long and virtually useless laundry list[s] of objections to rulings . . . plainly supported by existing precedent." *Johnson*, 520 U.S. at 468.

The interaction of Count 2 with the other two counts at sentencing is central to Williams' first argument. Under 18 U.S.C. § 924(c), a separate term of imprisonment is required where a person, "during and in relation to any crime of violence or drug trafficking crime . . . uses . . . a firearm." 18 U.S.C. § 924(c)(1)(A). The separate term is "*in addition to* the punishment provided for such crime of violence or drug trafficking crime." *Id.* (emphasis added).

At the time of Williams' sentencing, Sixth Circuit precedent dictated that a "sentencing court must determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence." *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007). We held in

*Franklin* that the discretion *United States v. Booker*, 543 U.S. 220 (2005), conferred on courts to sentence below statutory maximums did not authorize courts to impose sentences below statutory minimums. *Franklin*, 499 F.3d at 585-86. With respect to taking a § 924(c) mandatory sentence into account in determining sentence for other, underlying offenses, this Court approvingly cited the Seventh Circuit's holding in *United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007). There, our sister circuit reversed the district court's judgment adjusting the guideline part of the defendant's sentence so as to take into account the mandatory sentence under § 924(c)(1)(A):

> The judge thought that automatically adding 84 months to the sentence for the bank robbery in which the gun was used unreasonably limited her discretion. . . . She is . . . not entitled to override Congress's [mandate]. [*Booker*] . . . did not authorize district judges to ignore statutory sentencing ranges.

*Franklin*, 499 F.3d at 585 (quoting *Roberson*, 474 F.3d at 434). We went on to "acknowledge the tension with section 3553(a)," but emphasized nevertheless that that "very general statute cannot be understood to authorize courts to sentence below minimums specifically prescribed by Congress." *Id.* at 585-86 (quoting *Roberson*, 474 F.3d at 436).

*Dean* overturned that precedent. There, the Supreme Court took up the question of "whether, in calculating the sentence for the predicate offense, a judge must ignore the fact that the defendant will serve the mandatory minimums imposed under § 924(c)." *Dean*, 137 S. Ct. at 1174. In its decision, handed down on April 3, 2017, the Court held that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." *Id.* at 1176-77. "[S]o long as [a district court] imposes the mandatory minimum 'in addition to' the sentence for the violent or drug trafficking crime," even a consecutive one-day sentence for the predicate offense is consistent with § 924(c). *Id.* Thus, the rule in *Dean* is a

permissive one: at sentencing on the underlying offense, a district court *may*, but need not, take into consideration the separate mandatory minimum required by § 924(c). *Id.*

Remand for resentencing is warranted under *Dean*. *See id.* Under the constraint imposed by *Franklin*, the district court was precluded from considering Williams's mandatory 10-year sentence under § 924(c) when it was determining the sentence for his predicate offenses. *See* 499 F.3d at 586. Following *Dean*'s authorization to sentencing courts to consider a defendant's § 924(c) sentence when calculating any remaining sentences, 137 S. Ct. at 1175-78, we have recently remanded for resentencing cases similar to the one before this Court, *see United States v. Person*, 2017 U.S. App. LEXIS 22583, at \*10-13 (6th Cir. Nov. 9, 2017) (where defendant's 77 to 96 months' guidelines range for the predicate offenses was increased by 35 years for two § 924(c) sentences, finding that "had the district court known it could consider" the § 924(c) sentence in sentencing for the predicate offenses, "it may have sentenced [the defendant] differently"); *United States v. Henry*, No. 16-2745, 2018 U.S. App. LEXIS 1880, at \*9 (6th Cir. Jan. 25, 2018) (following the reasoning in *Person*). There is no compelling reason why we should not do the same. Had the district court known it could consider Williams's 10-year mandatory sentence under § 924(c) when determining his sentence for Counts 1 and 3, it might have sentenced him differently. *See Person*, 2017 U.S. App. LEXIS 22583, at \*10-13. Thus, remand is appropriate for the limited purpose of allowing the district court to consider Williams's § 924(c) mandatory minimum sentence in resentencing Williams.

### III

For the foregoing reasons, we **AFFIRM** the application of the "life-threatening injury" guideline enhancement but **REMAND** for resentencing in light of *Dean*.