RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0028P (6th Cir.)
File Name: 03a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
 *Plaintiff-Appellee,*

 *v.*

DAVID EUGENE RICKETTS
(01-1055); DONALD LEE
SWACKHAMMER (01-1296),
 *Defendants-Appellants.*

Nos. 01-1055/1296

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00220—Richard A. Enslen, District Judge.

Argued: October 29, 2002

Decided and Filed: January 24, 2003

Before: MARTIN, Chief Circuit Judge; NELSON and
GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Christopher P. Yates, FEDERAL PUBLIC
DEFENDERS OFFICE, Grand Rapids, Michigan, Martin J.
Beres, St. Clair Shores, Michigan, for Appellants. John C.
Bruha, ASSISTANT UNITED STATES ATTORNEY, Grand

Rapids, Michigan, for Appellee. **ON BRIEF:** Christopher P. Yates, FEDERAL PUBLIC DEFENDERS OFFICE, Grand Rapids, Michigan, Martin J. Beres, St. Clair Shores, Michigan, for Appellants. John C. Bruha, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Chief Circuit Judge. Defendants, David Ricketts and Donald Swackhammer, challenge their convictions growing out of a drug conspiracy involving a murder with a firearm. Though they were tried independently and at separate times, the clerk of court joined their appeals together. On appeal, Ricketts and Swackhammer raise between them several issues for review, ranging from the constitutionality of 18 U.S.C. § 924(c) to the admission of evidence. For the reasons that follow, we affirm the district court.

On the evening of April 7, 1996, David Ricketts, Donald Swackhammer and Michael McKinney drove to a duplex near downtown Grand Rapids to collect money for drugs previously sold. While the money involved was relatively insignificant, McKinney and Swackhammer brought sawed-off shotguns. As David Ricketts waited outside in the van, McKinney and Swackhammer entered an apartment where they found David Brock and Laurie Briggs. According to McKinney's testimony, Swackhammer first asked Brock for the money. On Brock's failing to produce the money, Swackhammer immediately began shooting. When Swackhammer began firing his shotgun, McKinney fled. As he ran, he heard Laurie Briggs screaming and then more shots. Brock survived the shooting, but Laurie Briggs died. All the shots fired were from Swackhammer's shotgun.

In November of 1998 a federal grand jury returned a five-count indictment against Ricketts and Swackhammer. The

defendants were charged with conspiring to distribute various controlled substances in violation of 21 U.S.C. §§ 846 and 841(a)(1), the use of a sawed-off shotgun in relation to a drug conspiracy in violation of 18 U.S.C. § 924(c), the murder of Laurie Briggs in connection with a drug conspiracy in violation of 18 U.S.C. § 924(i) [now codified as 924(j)], and possession of sawed-off shotguns in violation of 18 U.S.C. § 5861(d). They were also charged with being felons in possession of firearms in violation of 18 U.S.C. § 922(g).

After two separate trials involving multiple witnesses, each jury found Swackhammer and Ricketts guilty on all five counts. The trial court sentenced Ricketts to two consecutive life terms, plus ten years, along with two concurrent ten-year sentences. Swackhammer was subsequently sentenced to forty years for count one, ten years for count two, a consecutive sentence of life in prison on count three, and concurrent terms of ten years each on counts four and five.

On appeal, Swackhammer and Ricketts raise several issues for review. First, they jointly argue that counts two and three do not substantially affect interstate commerce and thus fall outside the Commerce Clause. *See United States v. Lopez,* 514 U.S. 549 (1995); *See also United States v. Morrison*, 529 U.S. 598 (2000). Relying on the recent Supreme Court opinions of *United States v. Lopez* and *United States v. Morrison*, they argue that use of a firearm and committing a firearm murder in connection with a drug conspiracy, violations of 18 U.S.C. §§ 924(c) & 924(i), only affect *intrastate* commerce. Therefore, they contend that these acts fall outside the Commerce Clause of the Constitution. Both admit, however, that the underlying crime of a drug conspiracy does substantially affect interstate commerce. The use of a firearm and the commission of a firearm murder in a drug conspiracy are not free-standing statutes, but are tied to the underlying drug conspiracy offense which unquestioningly substantially affects interstate commerce.

Furthermore, Swackhammer's and Ricketts's actions are markedly different from those in *Lopez* and *Morrison*. Mere

possession of a gun in a school zone or committing a gender-motivated crime of violence are substantially different from a firearm murder in a drug conspiracy or possessing a gun in a drug conspiracy. *See Lopez,* 514 U.S. at 561-562; *United States v. Morrison*, 529 U.S. at 617-618. We believe that 18 U.S.C. § 924(c) falls squarely within Congress' Commerce Power. *See United States v. Nguyen,* 155 F.3d 1219 (10th Cir. 1998); *see also United States v. Crump*, 120 F.3d 462, (4th Cir. 1997); *United States v. Walker,* 142 F.3d 103, (2d Cir. 1998); *United States v. Harris,* 108 F.3d 1107 (9th Cir. 1997). Not only does the use of a firearm in carrying out a drug conspiracy substantially affect interstate commerce, but a firearm murder committed in carrying out a drug conspiracy also substantially affects interstate commerce. *See Nguyen, 155 F.3d at 1227*; *see also United States v. Miller*, 283 F.3d 907, 914 (8th Cir. 2002).

Donald Swackhammer argues independently that the district court abused its discretion when it refused to give his proposed jury instruction concerning impeachment by prior inconsistent statements. The issue is whether the jury considered out-of-court assertions used properly for impeachment purposes mistakenly as substantive evidence. Review in this Court is whether the jury instructions fairly and adequately cover the issues and state the applicable law for the jury. *United States v. Williams,* 952 F.2d 1504, 1512 (6th Cir. 1991). In *United States v. Gibbs*, 182 F.3d 408, 432 (6th Cir. 1999), we held that a district court's refusal to submit a proposed jury instruction amounts to reversible error only if the refused instruction is (1) a correct statement of the law, (2) not substantially covered by other included instructions, and (3) concerns an important point which impairs the defendant's theory of the case.

The jury instruction used by the district court in Swackhammer's case instructed the jury to consider whether "the witness said or did something . . . that is inconsistent with what the witness said while testifying in the courtroom." Swackhammer's proposed instruction states "you have also heard that before this trial [the witness] made a statement that

conclusion of his trial, Ricketts asked the court to admit into evidence a certified copy of the docket sheet from Bennie Rich's case. Ricketts wanted to establish the date Rich was charged, his first appearance in court, the time of the indictment and that Rich was in custody awaiting trial at the time of the shooting. The district court reasoned that there was no relationship between these facts and the evidence already heard in the courtroom. The only evidence heard in the courtroom concerning Rich was that he called the apartment which Briggs occupied asking for legal help. The docket sheet was either irrelevant or redundant and cumulative. After reviewing the record, the district court did not abuse its discretion in refusing to admit the docket sheet.

The judgment and sentence of both Ricketts and Swackhammer are affirmed.

sentencing Swackhammer consecutively to the undischarged state sentence. Furthermore, the district court did not err in choosing to make the sentence consecutive to the more significant state armed bank robbery sentence as opposed to the two lesser state sentences.

David Ricketts argues independently that the district court erred in his trial when the court permitted jurors to submit five questions to witnesses without counsel first being allowed to review those questions. Recently, in *United States v. Collins,* 226 F.3d 457, 462, (6th Cir. 2000)*,* we discouraged the use of juror questions. We held, however, that if a district court allows this practice, significant cautionary measures must be used. *Id.* at 463. Here no cautionary measures were used. When juror questions are posed to the witness, counsel must be given the opportunity to review them and have their objections placed in the record before the questions are submitted to the jury. This procedure was not followed in this case.

The question then becomes, if this is an error, is it harmless. Here, while we believe it was error, a review of the total record leads to the conclusion that it was harmless. During the several days of testimony, Ricketts's counsel reviewed all but these five juror questions. These five questions that slipped past review on the third day of trial were not in themselves highly prejudicial to Ricketts. Of the five questions, only two could possibly be construed as prejudicial: 1) Did Bennie Rich, awaiting trial on drug and gun charges, have Laurie Briggs killed because she snitched?; and 2) Did the witness see the murder weapon in another person's house? Neither of these questions significantly impairs the theory offered by the defense that someone else killed Laurie Briggs.

The last issue for review is whether the district court abused its discretion in failing to admit into evidence a docket sheet of another case. During the trial, Ricketts advanced the theory that Bennie Rich, then awaiting trial for drug and gun charges, ordered the murder of Laurie Briggs. At the

may have been different from his testimony here in court. The earlier statement was brought to your attention only to help you decide how believable his testimony was. You cannot use it as proof of anything else." Swackhammer's proposed instruction with its explicit hearsay limitation is not a correct statement of the law for the facts in this case. Several out-of-court statements made by McKinney were made under oath and hence could be used as substantive evidence. Fed. R. Evid. 801(d)(1)(A). Specifically, the United States admitted Michael McKinney's sworn statements at his guilty plea hearing on November 20, 1997, and his sworn grand jury testimony on December 16, 1997. Swackhammer's proposed jury instruction failed to distinguish between sworn statements that could be used as substantive evidence and unsworn statements that could not. The district court, therefore, did not abuse its discretion in refusing to give his proposed instruction.

Swackhammer also argues that the United States was required to prove premeditation for the charge of firearm murder set forth in count three. Furthermore, Swackhammer argues the failure to do so in this case resulted in a constructive amendment of the indictment, which violates the Fifth Amendment because the "accused [was not] tried only on those offenses presented in an indictment and returned by a grand jury." *United States v. Manning,* 142 F.3d 336, 339 (6th Cir. 1998) (citing *Stirone v. United States,* 361 U.S. 212, 217-219 (1960)).

The third count charges Swackhammer with firearm murder in furtherance of a drug conspiracy in violation of 18 U.S.C. § 924(i) [now codified as 924(j)]. This statute states "A person who, in the course of a violation of [§ 924(c)], causes the death of a person through the use of a firearm, shall – (1) if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . ." 18 U.S.C. § 924(j).

This statute incorporates the definition of murder found in 18 U.S.C. § 1111. The plain language of 18 U.S.C. § 1111

broadly defines murder, incorporating both first and second degree murder within its definition. 18 U.S.C. § 1111(a) states:

(a) Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait or any other kind of willful deliberate, malicious and premeditated killing . . . is murder in the first degree.
Any other murder is murder in the second degree.

This provision does two things: it defines murder "as the unlawful killing of a human being with malice aforethought" and divides murder into first and second degrees. All that is necessary to prove that a death is a murder under section 924(j) then is to show that it was an "unlawful killing of a human being with malice aforethought." Thus proof of only second degree murder is sufficient for proving murder under section 1111 and gaining a conviction under section 924(j).

Because the United States was not required to prove premeditation in order to convict Swackhammer for murder as defined in section 1111, Swackhammer's argument that there was a constructive amendment of count three of the indictment also fails. Count three charged Swackhammer with a firearm murder during or in relation to a drug trafficking crime, 18 U.S.C. § 924(j). Any additional language in count three indicating that Swackhammer committed premeditated murder is clearly extraneous and unnecessary to convict the defendant under section 924(j). *United States v. Miller*, 471 U.S. 130, 136 (1985).

Swackhammer next argues that the district court abused its discretion in his sentencing. Swackhammer asserts that the testimony of the United States's key witness for establishing drug quantities was equivocal. The witness, Rachel West, testified that Swackhammer sold a couple ounces of cocaine powder each week for a three month period. This amount alone is well over five hundred grams. Regarding the amount of crack cocaine, the witness testified that she obtained four twenty-dollar rocks from Swackhammer any day she could.

She also testified that she saw the defendant manufacture squares of crack cocaine and break each square into as many as fifty to one hundred rocks. Approximately fifty rocks contain the five grams necessary to meet the drug specifications in the indictment. The district court cannot ignore the jury's findings as to drug quantity unless there is insufficient evidence to support those findings. *See United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000) (jury determines minimum drug amount); *United States v. Connery*, 867 F.2d 929 (6th Cir. 1989) (court may not ignore jury verdict if there is sufficient evidence to support it). On reviewing the testimony, we conclude there is ample evidence to support the jury's findings that the drug conspiracy involved at least five hundred grams of cocaine powder and five grams of crack cocaine.

Moreover, the district court did not abuse its discretion in making Swackhammer's federal sentences consecutive to the state sentence he was already serving for armed bank robbery and two lesser state sentences. In 1997, Swackhammer was convicted in state court of bank robbery and felony firearm charges. He escaped while awaiting trial on those charges and was subsequently convicted for this escape. The sentencing memorandum urged the district court to make Swackhammer's federal sentences consecutive to his state sentence because, among other things Swackhammer did not accept responsibility for the bank robbery as evidenced by his escape.

The controlling Sentencing Guideline 5G1.3(c) states "the sentence for the instant offense may be imposed to run concurrently, partially concurrently or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Subsection (c) gives district courts discretion to fashion sentences appropriate for complex situations. U.S.S.G. 5G1.3(c) (commentary on subsection (c)). Here Swackhammer had several undischarged terms of imprisonment while also having escaped from prison. Noting and being aware of this discretion, the district court did not commit error in