NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0607n.06

No. 09-4423

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 24, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff–Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| ADAM C. MCCLELLAN, | ) | |
| | ) | |
| Defendant–Appellant. | ) | |
| | ) | |

Before: KEITH, GIBBONS, and WHITE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. On June 7, 2008, Christopher Roush was killed during the course of a robbery gone awry. That evening, Michael Haynie entered Roush's home pursuant to a plan concocted by Adam C. McClellan and Elisha Lacy Dickens to rob Roush of money and drugs. After Haynie entered Roush's home, a struggle ensued in which Haynie struck Roush twice in the head with a gun. The gun discharged and hit Roush in the back of the head, killing him.

McClellan was convicted by a jury on six counts of an indictment, charging him with interstate stalking, firearms crimes, and drug trafficking crimes. The district court sentenced McClellan to a total of 480 months' imprisonment. McClellan appeals his conviction, arguing (1) the district court erred by denying his motion for judgment of acquittal, and, in the alternative, the

-1-

jury verdicts were against the manifest weight of the evidence; and (2) the district court erred in failing to dismiss one count of the indictment. For the following reasons, we affirm McClellan's conviction.

I.

In the summer of 2007, defendant–appellant Adam McClellan went from Columbus, Ohio, to Meigs County, Ohio, to cultivate marijuana. McClellan first lived in the Mason Motel in Mason, West Virginia but soon moved into a trailer park with a woman named Tangy Laudermilt. Prior to McClellan, Laudermilt dated the victim, Christopher Roush, and they lived together in the same trailer park from about December 2005 until March 2007. During this time, Laudermilt and Roush purchased crack cocaine from Frank Dickens.[1] During the summer of 2007, McClellan met Frank. The two became friends, and McClellan spent time at Frank's house and sold Frank marijuana. After a brief return to Columbus in the fall of 2007, McClellan and Frank's business relationship resumed in 2008 when McClellan sold marijuana and cocaine to Frank. Frank purchased cocaine from both McClellan and another dealer, and, at this time, Christopher Roush was Frank's "number one customer."

In the spring of 2008, McClellan returned to Meigs County and stayed with Frank for about three weeks. McClellan had no money and, according to Frank, often spoke about selling marijuana and "hitting a lick"—meaning doing something illegal to get money for drugs, such as robbing someone. While staying with Frank, McClellan met Frank's brother, Elisha "Lacy" Dickens.

---

[1]We will refer to Frank Dickens and his brother Elisha Lacy Dickens as "Frank" and "Lacy" respectively.

McClellan and Frank subsequently had a disagreement, which Frank attributed to McClellan's lack of money and talk of his drug business in front of Frank's children (although McClellan testified that there was no "falling out").

McClellan then went to stay with Lacy. About a week before Roush was killed, Frank went to Lacy's house to confront McClellan because he had heard that McClellan informed Frank's wife and girlfriend about Frank's interest in a third woman, Stacy Stewart. During the confrontation, Frank hit McClellan in the face giving him two black eyes, and McClellan cut Frank with a knife. According to Stewart, after the fight McClellan said that he wanted to "hurt Frank's pocket." The fight also caused problems between Frank and Lacy Dickens because Frank felt betrayed that Lacy still allowed McClellan to stay with him after the fight.

After the fight, Lacy and McClellan began to make progress on a plan to set up a "trap house" for the sole purpose of selling drugs. Neither McClellan nor Lacy wanted to stay in the house, so McClellan contacted Michael Haynie, whom he had met in the spring of 2008. Haynie informed McClellan that he needed a place to stay because he was out of work; McClellan offered him a place to stay, a few meals, and an introduction to Lacy. Haynie came to Meigs County in his girlfriend's white 1992 Dodge Spirit. On Friday, June 6, 2008, the day before Roush was killed, McClellan picked Haynie up in a green pickup truck, and they later met Lacy. Haynie understood that they were "going to hit a lick" but was unsure of what that would be—there was talk of breaking into a veterinary clinic, stealing drugs, and robbing someone who sold drugs. Haynie testified that the men suggested that Roush was a good target because he was gun shy, and that "[i]f you go in and show a gun, he's going to comply with your demands" and not report the robbery. The three men went

to pick up Haynie's car and drove the 1992 Dodge Spirit back and forth between Ohio and West Virginia, where Lacy and McClellan pointed out "dope houses," including Roush's home in West Virginia. According to Haynie's testimony, the three went to pick up Lacy's car and met at Lacy's house, where Lacy "provide[d] a [black automatic] .45 [caliber handgun], and he wanted [Haynie] and [McClellan] to do a run, go over there and hit it." According to Haynie, the plan was that he would keep the money from robbing Roush, and the drugs would go to McClellan and Lacy. At trial, McClellan denied that he participated in the planning of this robbery.

After getting the gun on the night of June 6, Haynie testified that he and McClellan went to Roush's house. Haynie approached the house with the gun and knocked; when there was no answer, Haynie returned to the car. The two returned to Lacy's home in Ohio. In the early hours of June 7, McClellan and Haynie left Lacy's and drove the Dodge Spirit to the Mason Hotel in West Virginia. McClellan used a false name to rent the room, which Haynie testified was paid for by Lacy.

After sleeping, on the morning of June 7, McClellan woke up sick. At this point, the testimony of Haynie and McClellan begins to differ greatly. Both testified that McClellan went to get morphine. McClellan testified that he fell asleep shortly after taking the morphine pills and when he awoke, Haynie was gone and had already committed the robbery.

Haynie testified that later in the evening of June 7, he, McClellan, and Lacy were together in the hotel in West Virginia planning the robbery. McClellan had the .45 in his bag, and Lacy came to the hotel with bandanas. When it was dark and after Lacy left, McClellan and Haynie dressed in dark clothes, baseball caps, and bandanas. McClellan gave the gun to Haynie, and Haynie checked to see that it was loaded. The two drove the Dodge Spirit to Roush's house at approximately

-4-

10:00–10:30 pm. Haynie went to the door of Roush's house while McClellan waited in the car. Shane Leach answered the door, and Haynie instructed him to give him drugs and money. When Leach said there were none, Haynie racked the slide of the gun and struck Leach, causing Leach to run from the house. When Haynie was inside the house, he struck Roush with the gun and knocked him to the floor. This strike caused the gun to discharge into the ceiling. When Roush got up from the floor, Haynie struck him again with the gun, which discharged a second bullet into Roush's head. Haynie fled, and McClellan went back to Ohio with him. Roush died as a result of the bullet wound.

McClellan's testimony was that he missed the entire robbery and that as he was walking out of the hotel to purchase cigarettes, Haynie drove up. Both McClellan and Haynie testified that McClellan showed Haynie the pond in Meigs County in which Haynie disposed of the gun. The two then drove to Athens, Ohio, and Haynie dropped McClellan off so McClellan could meet Lacy. McClellan purchased new clothes, and after he failed to find a ride, he called Haynie to come back to Athens and pick him up.

Haynie was arrested on July 29, 2008, and McClellan surrendered himself to authorities on July 31, 2008. On August 26, 2008, a grand jury returned a six-count indictment against McClellan and Haynie. On January 5, 2009, Haynie pled guilty three counts of the original indictment and was later sentenced to 687 months' imprisonment followed by 60 months' supervised release. On January 6, 2009, the grand jury returned a six-count superseding indictment against McClellan and Lacy.

At McClellan's trial, the government moved to amend this indictment, resulting in the following charges. Count 1 charged knowingly traveling in interstate commerce with the intent to

injure or harass Roush, and in the course of, or as a result of, such travel, the defendants placed Roush in reasonable fear of death or serious bodily injury, and such acts resulted in the death of Roush, in violation of 18 U.S.C. §§ 2261A(1), 2261(b)(1), and 2. Count 2 charged knowingly using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, that is, traveling in interstate commerce with the intent to injure or harass Roush, in violation of 18 U.S.C. §§ 924(c) and 2. Count 3 charged knowingly traveling in interstate commerce, with the intent to commit a crime of violence to further conspiracy to distribute and possess with intent to distribute a controlled substance, and thereafter committing and attempting to commit the crime of violence, that is robbery and/or burglary to further such unlawful activity, and the crime of violence resulted in the death of Roush, in violation of 18 U.S.C. §§ 1952 and 2. Count 4 charged knowingly using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, that is traveling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, in violation of 18 U.S.C. § 924(c) and 2. Count 5 charged knowingly, intentionally, and unlawfully combining, conspiring, confederating, and agreeing with each other and with diverse other persons, to possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine and crack, in violation of 21 U.S.C. § 846. Finally, count 6 charged knowingly using, carrying, brandishing, and discharging a firearm during and in relation to a drug trafficking crime, and, in so doing, the defendants committed murder as defined in 18 U.S.C. § 1111, the unlawful killing of Roush with malice aforethought, in violation of 18 U.S.C. §§ 924(c), 924(j)(1), and 2.

McClellan moved for judgment of acquittal regarding counts 1, 2, 3, 4, and 6 at the close of the government's case. The district court denied the motion with respect to counts 1, 2, 3, and 6, and reserved ruling on count 4. McClellan renewed his motion with respect to all counts at the close of all of the evidence, and the district court denied the motion with respect to all counts. On May 27, 2009, the jury convicted McClellan of all counts of the amended indictment. In a separate trial, Lacy was also convicted on all six counts and sentenced to 600 months' imprisonment. McClellan was sentenced to 360 months as to counts 1 and 3 to run concurrently, 240 months as to count 5 to run concurrently, 120 months total as to counts 2, 4, and 6 to run consecutively for a total sentence of 480 months' imprisonment. McClellan appeals his conviction.

## II.

McClellan first challenges the district court's denial of his motion for judgment of acquittal as to counts 1, 2, 3, 4, and 6. In the alternative, he argues that the jury verdicts are against the manifest weight of the evidence.

## A.

Before the case was submitted to the jury, McClellan moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. We review the denial of a Rule 29 motion for judgment of acquittal *de novo* and the district court's factual findings for clear error. *United States v. Al-Zubaidy*, 283 F.3d 804, 808 (6th Cir. 2002). The district court should grant this motion if "there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Fawaz*, 881 F.2d 259, 261 (6th Cir. 1989) (internal quotation marks omitted). In reviewing the district court's denial of McClellan's motion for acquittal, we "view the

evidence and all reasonable inferences in the light most favorable to the government." *United States v. Gibson*, 675 F.2d 825, 829 (6th Cir. 1982). We "cannot weigh the evidence or judge credibility independently in deciding whether the District Court erred in submitting the case to the jury." *Id.*

McClellan challenges the district court's denial of his motion for acquittal on counts 1, 2, 3, 4, and 6. In order to evaluate these challenges, we must determine, viewing the evidence in the light most favorable to the government, whether there is any evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.

1.

In count 1, McClellan was charged with interstate stalking in violation of 18 U.S.C. §§ 2261A(1), 2261(b)(1) and (2). "Section 2261A has three main elements: (a) that interstate travel occurred; (b) that [McClellan's] intent was to injure or harass another person; and (c) that the person he intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel." *Al-Zubaidy*, 283 F.3d at 808. McClellan argues that the government failed to satisfy the "interstate commerce" element of the crime because it failed to provide proof of a temporal nexus between the travel and the intent to injure or harass. The government does not contest the requirement for the existence of a nexus, but it maintains that it presented evidence sufficient to establish "a nexus between McClellan's and Haynie's interstate travel from Ohio to West Virginia and their intent to injure or harass."

In *Al-Zubaidy*, the defendant similarly argued that the government failed to establish at trial that he had "crossed state lines with the intent to injure or harass." 283 F.3d at 808. In that case, the court inferred intent from the totality of the circumstances. *Id.* at 809. The defendant's interstate

travel occurred several days after the victim moved to that state; the defendant's harassment of the victim's family occurred almost immediately after his interstate travel; but the defendant's harassment of the victim did not occur until almost two months after his interstate travel. *Id.* at 809. It is true that the intent must be formed upon the act of interstate travel, but in order to infer such intent there is no requirement that the travel and the harassment be within a particular temporal proximity. Indeed, in *Al-Zubaidy*, despite the several-day period between the defendant's interstate travel and his harassment of the victim's parents and the greater two-month period between the defendant's interstate travel and the harassment of the victim, the court found that this "evidence supporting the district court's finding that [the defendant] possessed the requisite intent certainly 'would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt,'" and thus survived *de novo* review. *Id.* at 809.

In making his argument, McClellan separates the incidents of June 6 and June 7, 2008. McClellan claims that the testimony at trial indicated that the men devised the plan to rob Roush only after they had crossed state lines and were already in the West Virginia hotel early on June 7. But we see no reason to view the events that occurred late on June 7, 2008, as isolated from the very similar events of the night before. The evidence presented at trial suggests that the robbery on June 7 was intertwined with the June 6 attempt, and there is sufficient evidence to establish a nexus between McClellan's intent to injure or harass Roush and his interstate travel in the early morning hours of June 7 from Ohio to the Mason Hotel in West Virginia.

For instance, during redirect examination of Haynie by the government's attorney, when asked when they went "across that bridge . . . to the Mason hotel" in West Virginia, what they were

"going over to do ultimately in West Virginia," Haynie responded, "Rob Red[, Roush's nickname].

Rob Roush." Haynie stated that they were "[j]ust waiting until Saturday night [June 7]. Need a

place to stay, and we can't stay at Lacy's all day. He's got traffic coming and going. He don't want

to be seen with me." Haynie's testimony alone was sufficient that a reasonable mind might fairly

conclude guilt beyond a reasonable doubt on the crime of stalking. We may infer intent "'from the

totality of circumstances surrounding the commission of the prohibited act.'" *Al-Zubaidy*, 283 F.3d

at 809 (quoting *United States v. Stagman*, 446 F.2d 489, 493 (6th Cir. 1971)). This statement from

Haynie's testimony alone supports the inference that McClellan and Haynie had formed the requisite

intent when initially crossing the border on June 6. This statement also supports the notion that their

intent carried over to the next morning, June 7, when they again crossed the state border to stay in

a hotel in West Virginia; its implication is that they did not go to West Virginia simply to rest but

rather crossed the state line to lie in wait for the next attempt. An argument not only that the intent

to rob Roush formed on July 6 had vanished by the early morning hours on June 7, but also that no

reasonable jury could conclude that this intent had carried over, cannot be sustained.[2]

---

[2]If this is not sufficient, however, the government points to other evidence that corroborates Haynie's testimony. First, McClellan was familiar with Roush as they both had lived with the same woman and both did business with Frank Dickens. Second, McClellan had motives of retaliating against Frank for their fight and of eliminating competition from a rival drug dealer. Third, the similarities between the June 6 and June 7 incidents at Roush's home indicate that the intent was also similar. As the government asserts, "the same basic plan was repeated": "The robbery was to occur at Roush's house; Haynie was given the same .45 gun to have with him when he went into the house; Haynie was to demand drugs and money; and McClellan was to wait outside the car." Fourth, by checking into the hotel under a false name, McClellan indicated that he had ill intentions. Fifth, there was evidence that McClellan had told his cell-mate that the men had decided to rob Roush and that McClellan had wished to "hit" people who bought drugs from Frank Dickens.

There is more than sufficient evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on count 1. *See Fawaz*, 881 F.2d at 261. We affirm the district court's decision denying McClellan's motion for acquittal on count 1.

2.

McClellan also contests the denial of his motion for acquittal on counts 2 through 4 because these counts are derivative of count 1 or required the same nexus between interstate travel and intent. Count 2 charged McClellan with using, carrying, or possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2. The underlying crime of violence was the stalking provided for in count 1, so McClellan claims that because count 1 could not be proved, neither could count 2. Count 3 charged McClellan with traveling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, that being conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and thereafter committing and attempting to commit the crime of violence, that being robbery and/or burglary, to further such unlawful activity, and the crime of violence resulted in the death of Roush, in violation of 18 U.S.C. §§ 1952 and 2. Similar to the argument in count 1, McClellan argues that the plan to rob Roush had been abandoned by the time they went to the West Virginia hotel on July 7, and, therefore, no intent to commit the crime was formed at the time of the interstate travel. Count 4 charged McClellan with using, carrying, or possessing a firearm during and in relation to a crime of violence to further unlawful activity, in violation of 18 U.S.C. §§ 924(c) and 2. The underlying crime of violence was provided for in count 3, so McClellan claims that if count 3 cannot be proven, neither can count 4.

Because evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt on count 1 was presented prior to the motion for acquittal, we find that McClellan's arguments on counts 2, 3, and 4 similarly fail.

3.

Count 6 charged McClellan with aiding and abetting the knowing use, carrying, brandishing, and discharging of a firearm during and in relation to the crime of conspiracy to possess with the intent to distribute in violation of 21 U.S.C. § 846, and in doing so committed murder as defined in 18 U.S.C. § 1111, in violation of 18 U.S.C. §§ 924(c), (j)(1), and 2. McClellan argues that because the parties stipulated that Roush died as a result of an accidental discharge, there was no malice aforethought as required for murder, defeating the portion of his charge under § 924(j).

"All that is necessary to prove that a death is a murder under section 924(j) . . . is to show that it was an 'unlawful killing of a human being with malice aforethought,'" and thus proof of second degree murder is sufficient to prove murder under § 1111. *United States v. Ricketts*, 317 F.3d 540, 544–45 (6th Cir. 2003). Our circuit has found that a "gross deviation from a reasonable standard of care establishe[s] the requisite malice aforethought to hold [someone] accountable for second degree murder." *United States v. Milton*, 27 F.3d 203, 208 (6th Cir. 1994). "Malice aforethought may be inferred when the defendant grossly deviates from the standard of care to such an extent that a jury could conclude that he must have been aware of a serious risk of death or serious bodily injury." *United States v. Conatser*, 514 F.3d 508, 523 (6th Cir. 2008) (internal quotation marks omitted).

In McClellan's case, the district court correctly defined killing someone with "[m]alice aforethought as . . . either to kill another person deliberately and intentionally or to act with callous

-12-

and wanton disregard for human life," not merely an intentional killing. The district court did not distinguish between McClellan's and Haynie's conduct in determining whether the acts committed were sufficiently callous and demonstrated wanton disregard for human life. During its ruling on the motion for acquittal, it concluded that "a reasonable jury could find the act of pistol whipping someone . . . to sufficiently constitute the acts that are described in the definition of malice aforethought." The district court then denied the Rule 29 motion with respect to count 6.

In its brief, the government frames its argument in a similar way. The government cites to evidence of McClellan's giving the .45 gun to Haynie who made sure it was loaded. The government then set forth that a reasonable jury could find that Haynie acted recklessly with callous and wanton disregard for human life and in a manner that was a gross deviation from a reasonable standard of care. Thus Haynie, aided and abetted by McClellan, was aware of a serious risk of death or serious bodily harm. At oral argument, the government conceded that under an aiding and abetting theory of liability, Haynie's reckless actions may not be sufficient to attribute the requisite intent to McClellan; nonetheless, the government argued that McClellan's conduct also leads to an inference that he acted with malice aforethought. We need not determine whether Haynie's actions, which are sufficient to infer his intent, are also sufficient to implicate McClellan as an aider and abetter. We agree with the government's position that McClellan's actions alone allow us to infer malice aforethought. A reasonable jury could have found that, by sending Haynie into Roush's house with a loaded gun to commit a robbery, McClellan grossly deviated from a reasonable standard of care such that he was aware of a serious risk of death or serious bodily injury. *See Milton*, 27 F.3d at 208; *Conatser*, 514 F.3d at 523.

B.

In the alternative, McClellan states that the jury verdicts were against the manifest weight of the evidence. Because McClellan never specifically made a motion for a new trial based on the verdict being against the manifest weight of the evidence, he has waived this issue on appeal. *United States v. Grubbs*, 506 F.3d 434, 443 (6th Cir. 2007) (citing *United States v. Lutz*, 154 F.3d 581, 589 n.2 (6th Cir. 1998)).

III.

McClellan also contends that the district court erred in failing to dismiss count 4 after the government's amendment of the charge at trial. We review the sufficiency of an indictment *de novo*. *United States v. Combs*, 369 F.3d 925, 934 (6th Cir. 2004). "The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). "An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (internal quotation marks and editorial marks omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (internal quotation marks omitted); *see also United States v. Hudson*, 491 F.3d 590, 593 (6th Cir.

-14-

2007) (quoting same). "However, the recitation of statutory language must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged." *McAuliffe*, 490 F.3d at 531 (internal quotation marks omitted).

The language in the original indictment was as follows:

COUNT 4

On or about June 7, 2008, in the Southern District of Ohio and elsewhere, the defendants, ADAM C. MCCLELLAN, ELISHA LACY DICKENS and Michael A. Haynie who is not named as a defendant in this Superseding Indictment, did knowingly use, carry, brandish and discharge a firearm, that is, a pistol, during and in relation to a crime of violence, for which they may be prosecuted in a court of the United States, that is, traveling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, in violation of 18 U.S.C. § 1952*, and in so doing, the defendants, ADAM C. MCCLELLAN, ELISHA LACY DICKENS and Michael A. Haynie, committed murder as defined in 18 U.S.C. § 1111, that is the unlawful killing of Christopher Roush, with malice aforethought.*
In violation of 18 U.S.C. § 924(c), *924(j)(1)* and 2.

(Emphasis added). At trial, the prosecution asked to amend this count to remove the italicized language. After this revision was made, the district court asked McClellan's lawyer if he had any objection to the stated amendment with respect to count 4, to which he replied, "No, Your Honor." During McClellan's motion for acquittal, McClellan's counsel objected to the sufficiency of count 4; the government responded; and the court reserved judgment on the issue. The district court ruled after further argument during the jury charge conference. The district court found the amended indictment language to be sufficient.

The charged offense in count 4 is a violation of 18 U.S.C. § 924(c). Section 924(c)(1)(A) criminalizes any person who "uses or carries a firearm, or who . . . possesses a firearm" "during and

in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States." We understand this offense to have two elements: (1) the using and carrying of a gun and (2) the commission of a federal crime of violence. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280–81 (1999) (emphasizing that the "crime of violence element of the statute" is an essential element). Thus, the indictment must charge both the carrying or use of the gun and the crime of violence. McClellan claims that the "charge as amended fails to allege the specific underlying offense to which the § 924(c) offense attaches," because it failed to mention the burglary or robbery or a reference to count 3. The government argues that count 4 states the crime of violence, which is "traveling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, in violation of 18 U.S.C. § 1952."

First, we observe that the amended indictment tracked the language of § 924(c), as well as § 1952(a)(2), which is "generally sufficient." *See Hudson*, 471 F.3d at 593. Moreover, we note that count 4 is not to be read in isolation. It immediately follows count 3, which charged McClellan with "knowingly travel[ing] in interstate commerce . . . with the intent to commit a crime of violence to further an unlawful activity, that is conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and thereafter committ[ing] and attempt[ing] to commit the crime of violence, that is robbery and/or burglary to further such unlawful activity, and the crime of violence resulted in death of Christopher Roush." The recitation of statutory language in count 4, specifically referring to McClellan's offense under § 1952, accompanied by the facts and circumstances describing the charge under § 1952 in count 3, was sufficient to inform

McClellan of the offense elements and the charge against him. *See McAuliffe*, 490 F.3d at 531;

*Anderson*, 605 F.3d at 411.

In an unpublished table opinion, we addressed an argument almost identical to that made by

McClellan. In *United States v. Allgood*, count 5 of the superseding indictment charged defendant

Allgood thus:

> . . . ALLGOOD . . . knowingly used and carried firearms, to wit, [description of guns] during and in relation to a crime of violence for which [he] may be prosecuted in a court of the United States, to wit, Title 18, United States Code, Section 1952.
>     In violation of Title 18, United States Code, Section 924(c).

940 F.2d 663, 1991 WL 150733, at *2 (6th Cir. 1991) (table). The preceding count charged Allgood

with traveling in interstate commerce "with intent to commit a crime of violence and to further an

unlawful activity and thereafter attempted to commit a crime of violence to further an unlawful

activity, to wit: the use of firearms to obtain marijuana." *Id.* We found that § 1952(a)(2) is a crime

of violence, and "there can be no doubt that it fits the description of § 924(c)(3)(B)." *Id.* at *7.

Section 924(c)(3)(B) defines a crime of violence as a felony "that by its nature, involves a substantial

risk that physical force against the person or property of another may be used in the course of

committing the offense." Section 1952(a)(2) provides for punishment of "[w]hoever travels in

interstate or foreign commerce . . . with intent to . . . commit any crime of violence to further any

unlawful activity." Our court in *Allgood* reasoned, "Interstate travel with intent to commit a crime

of violence by one who thereafter performs or attempts to perform the crime of violence is obviously

a felony that involves 'by its nature' a substantial risk of physical force." *Allgood*, 1991 WL 150733,

at *7. We thus affirmed the district court's denial of Allgood's motion to dismiss count 5 of the indictment. *Id.*

We find *Allgood* persuasive. After amendment, count 4 of McClellan's indictment on its face charged McClellan with (1) "knowingly us[ing], carry[ing], brandish[ing] and discharg[ing] a firearm, that is, a pistol" during (2) a "crime of violence, for which they may be prosecuted in a court of the United States, that is, traveling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity, in violation of 18 U.S.C. § 1952." This clearly implicates § 1952(a)(2). And although the specific crime of violence was not stated in count 4, as reasoned in *Allgood*, the commission of an offense under § 1952(a)(2), which specifically implicates the commission or attempt to commit a "crime of violence to further any unlawful activity," involves a crime of violence as imagined under § 924.

We conclude that the allegations of count 4 of the indictment were sufficient.

IV.

For the foregoing reasons, we affirm McClellan's conviction.

**HELENE N. WHITE, Circuit Judge** (concurring). I write separately with respect to the issue addressed in Part II.A.3 of the majority opinion. Although Haynie's conduct during the botched robbery would certainly qualify under the gross-deviation prong for proving malice, it is less clear whether furnishing a firearm to another with the expectation that the person robbed will immediately cooperate constitutes conduct that is "a gross deviation from a reasonable standard of care," *United States v. Milton*, 27 F.3d 203, 208 (6th Cir. 1994). *See United States v. Pearson*, 203 F.3d 1243, 1271 (10th Cir. 2000) (concluding that the defendant's conduct in providing a loaded gun to an accomplice for use in robbing a restaurant, where the accomplice accidentally fired the gun and killed a restaurant employee, does not establish the requisite degree of recklessness to demonstrate malice aforethought for the purposes of proving second-degree murder under 18 U.S.C. § 1111).

Nevertheless, because § 1111 permits the inference of malice from the intent to commit the underlying felony — here, robbery — the malice element is satisfied. *See United States v. Watkins*, 86 F.3d 1157, 1996 WL 272391, at *3 (6th Cir. 1996) (unpublished table opinion) (citing *United States v. Thomas*, 34 F.3d 44, 49 (2d Cir. 1994)) ("Section 1111 of Title 18 of the U.S.[ ]Code . . . incorporates the common law understanding that the requirement of malice aforethought for First Degree murder is satisfied if a person is killed during the perpetration of a felony."); *accord United States v. Allen*, 247 F.3d 741, 783-84 (8th Cir. 2001), *vacated on other grounds,* 536 U.S. 953 (2002); *United States v. Chanthadara*, 230 F.3d 1237, 1252-53 (10th Cir. 2000); *Pearson*, 203 F.3d at 1270; *United States v. Tham*, 118 F.3d 1501, 1508 (11th Cir. 1997); *United States v. Flores*, 63 F.3d 1342, 1371 (5th Cir. 1995); *United States v. Chischilly*, 30 F.3d 1144, 1159-60 (9th Cir. 1994).